D&L DISTRIBUTION, LLC and          )
MELVIN R. WEAVER & SONS, LLC,      )
                                   )        Civil Action
                    Plaintiffs     )        No. 12-cv-00810
          vs.                      )
                                   )
AGXPLORE INTERNATIONAL, LLC,       )
                                   )
                    Defendant      )

                         *   *   *

APPEARANCES:

          GEORGE C. WERNER, ESQUIRE
               On behalf of Plaintiffs

          JEFFERY H. KASS, ESQUIRE
          CHARLOTTE E. THOMAS, ESQUIRE
          MYLES A. SEIDENFRAU, ESQUIRE
               On behalf of Defendants

                         *   *   *
                      O P I N I O N

JAMES KNOLL GARDNER
United States District Judge

          This matter is before the court on Defendant's Motion

to Dismiss or, in the Alternative, Transfer and Consolidate,

which motion was filed on March 27, 2012.[1]  On April 17, 2012 the

Response of D&L Distribution, LLC and Melvin R. Weaver & Sons,

LLC to Agxplore's Motion to Dismiss or Transfer and Consolidate

was filed.[2]

---

          [1]     The motion was accompanied by the Memorandum in Support of
Defendant's Motion to Dismiss, or in the Alternative, Transfer and Consolidate
("Defendant's Memorandum"), and Exhibits A through C.

          [2]     Plaintiffs' response was accompanied by Memorandum in Opposition
to Defendant's Motion to Dismiss or in the Alternative, Transfer and
Consolidate ("Plaintiffs' Memorandum"), and Exhibit A.

Defendant in the within action, Agxplore International, LLC ("Agxplore") filed a complaint in the United States District Court for the Eastern District of Missouri, Southeastern Division alleging trademark infringment, unfair competition, and related claims, against Mark Shelley, a former Agxplore employee and an alleged current employee of plaintiffs in the within action, D&L Distribution, LLC and Melvin R. Weaver & Sons, LLC. Two weeks later, D&L Distribution, LLC and Melvin R. Weaver & Sons, LLC filed the within action in this court seeking a declaratory judgment that its use of trademarks identical to those at issue in Agxplore's Missouri complaint does not infringe any common law, state, or federal law protections available to Agxplore's trademarks.

Defendant Agxplore filed its within motion to dismiss the within action in the Eastern District of Pennsylvania, or in the alternative to transfer it to, and consolidate it with, the action in the Eastern District of Missouri. Defendant's motion requests dismissal "for lack of subject matter jurisdiction and/or improper venue under the first-filed rule."

For the reasons expressed below, I grant defendant's alternative motion to transfer plaintiff's declaratory judgment action pursuant to 28 U.S.C. §§ 1404(a) and 1406 and the first-filed rule. Because I am transferring this action to the Eastern

District of Missouri, I dismiss as moot defendant's motion to dismiss based upon an allegation of improper venue. To the contrary, I conclude that venue is proper in Missouri. I deny defendant's motion to consolidate this proceeding with the proceeding pending in Missouri because I leave the procedural question of how best to proceed with this declaratory judgment action post-transfer to the assigned judge in the United States District Court for the Eastern District of Missouri, Southeastern Division.

I also deny defendant's motion to dismiss for lack of subject matter jurisdiction because I conclude that both this court and the United States District Court for the Eastern District of Missouri have concurrent subject matter jurisdiction over this matter. Jurisdiction is proper pursuant to both diversity jurisdiction because the parties are citizens of different states, and federal question jurisdiction because the declaratory judgment is based on the Lanham Act, 15 U.S.C. § 1125(a).

Specifically, I exercise the discretion afforded me through the first-filed rule and the statutes governing transfer of venue to transfer plaintiffs' declaratory judgment action to the United States District Court for the Eastern District of Missouri, Southeast Division, based on the existence of a

previously filed related suit which is currently pending before that court.

More specifically, I find that the defendant in the within action, Agxplore International, LLC, and the plaintiff in the Missouri action are the identical entities. I further find that plaintiffs in the present action, D&L Distribution, LLC and Melvin R. Weaver & Sons, LLC, share a sufficient identity with the defendant in the Missouri action, their alleged employee Mark Shelly, and that the subject matter of the two suits are similarly identical.

Transfer will allow the Eastern District of Missouri to adjudicate both claims, which will promote judicial economy and foreclose the danger of conflicting rulings. Further, I conclude that plaintiffs have not sustained their burden of showing that compelling circumstances exist to allow divergence from the first-filed rule.

<u>JURISDICTION</u>

Jurisdiction in this action is based upon diversity of citizenship. Plaintiffs D&L Distribution, LLC and Melvin R. Weaver & Sons, LLC are Pennsylvania limited liability companies with all members having Pennsylvania citizenship. Defendant Agxplore International, LLC is a Missouri limited liability company with all members having Missouri citizenship. The amount in controversy is in excess of $75,000. <u>See</u> 28 U.S.C. § 1332.

Alternatively, jurisdiction is proper pursuant to federal question jurisdiction because the declaratory judgment action is based on the Lanham Act, 15 U.S.C. § 1125(a). Plaintiffs seek a declaration that they are not infringing upon Agxplore's federally registered trademarks. <u>See</u> 28 U.S.C. § 1331.

<u>VENUE</u>

Venue is contested in this case. Venue is proper in the Eastern District of Missouri pursuant to 28 U.S.C. § 1391(b)(2) because defendant is a limited liability company which is subject to the personal jurisdiction of the United States District Court for the Eastern District of Missouri.[3]

---

[3] Pursuant to 28 U.S.C. § 1391(b), venue is proper in the district where defendant resides, where a substantial part of the events occurred, or where defendant is subject to personal jurisdiction. For entities, such as limited liability companies, which do not reside in the district or state where the federal district court is located, venue is proper "in any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to the civil action in question...." 28 U.S.C. § 1391(b)(2).

Defendant Agxplore International, LLC is a Missouri limited liability company with its principal place of business located in Parma, Missouri. (See First Amended Complaint for Declaratory Judgment, filed February 23, 2012, paragraph 5.) All members of Agxplore are citizens of Missouri. (See First Amended Complaint, paragraph 6.) Accordingly, the Missouri court may exercise personal jurisdiction over defendant Agxplore. <u>See</u> <u>Maximum Human Performance, Inc. v. Dymatize Enterprises, Inc.</u>, 2009 WL 2778104 at **6-7 (D.N.J. August 27, 2009).

The Missouri Action

On January 30, 2012 plaintiff Agxplore International, LLC filed suit against defendant Mark Shelley[4] in the United States District Court for the Eastern District of Missouri, Southeast Division, alleging trademark infringement and unfair competition under 15 U.S.C. §§ 1125(a) and 1114, unfair competition under Missouri state and common law, Missouri state-law breach of contract, declaratory relief and tortious interference with business expectancy ("Missouri case").[5]

In the Missouri case, Agxplore alleges that Mr. Shelley "helped others adopt product lines (and now sells competing product lines) using names confusingly similar" to trademarked products registered to Agxplore.[6]  Specifically, the Complaint

---

[4]     Mark Shelley is a former employee of Agxplore who ended his employment with Agxplore in December of 2010.  While employed with Agxplore, Mr. Shelley acted as Agxplore's east coast sales representative selling Agxplore's agricultural products to Melvin R. Weaver & Sons, LLC ("Weaver"), who then marketed and sold the same products through PowerAG, a fictitious name utilized by D&L Distribution, LLC ("D&L").  Following his separation from employment, through the present, Mr. Shelley and another individual, Keith Snider, through their own unnamed LLC, now sell agricultural products directly to Weaver and D&L.

[5]     For the purposes of the present motion, I discuss only Agxplore's federal trademark claims as all other claims contained in the Missouri case are irrelevant to D&L's and Weaver's declaratory judgment action filed with this court.

[6]     See Complaint, filed by Agxplore on January 30, 2012 in the United States District Court for the Eastern District of Missouri, Southeastern Division ("Missouri Complaint").  See Document 1-4, which is Exhibit A to the original Complaint for Declaratory Judgment, filed February 15, 2012 in this court (Document 1).  The original complaint was superseded by the First Amended Complaint for Declaratory Judgment, which amended complaint was filed February 23, 2012 (Document 4-1) without any exhibits.

alleges that Mr. Shelley helped name, and currently sells, the following products: N-ERGIZE, NUTRIPOWER, SULPOWER, BORPOWER, CALPOWER, CHARGE CSOC, AND SPREADER 910.  Agxplore contends that the marketing and sale of these products infringe on its registered trademarks ENERGIZE, NUTRIPAK, SULPAK, BORPAK, CALPAK, CHARGE, AND SPREAD 90.[7]

On July 9, 2012 Keith Snider, Mr. Shelley's partner in the unnamed LLC, was deposed in the Missouri action.  His deposition testimony indicated that Mr. Shelley began selling products as a member of the unnamed LLC to D&L and Weaver following his departure from Agxplore in December 2010.

Mr. Snider refused to answer many specific questions regarding the LLC by asserting that the name of the LLC and the LLC's state of incorporation are "confidential, proprietary and competitive commercial information."[8]  A motion to compel Mr. Snider to answer the challenged questions is currently pending before the United States District Court for the Eastern District of Missouri.[9]

---

[7]    Plaintiffs contend that Agxplore holds a trademark in the names "SYNERGIZE", not "ENERGIZE"; and "SPREDDE 90", not "SPREAD 90".

[8]    Exhibit C to Defendant's Reply Memorandum in Support of its Motion to Dismiss or, in the Alternative, Transfer and Consolidate ("Defendant's Reply Memorandum"), Deposition of Keith Snider, July 9, 2012, at pages 42-43.

[9]    Exhibit D to Defendant's Reply Memorandum, Plaintiff Agxplore International, LLC's Motion to Compel Deposition Testimony of Non-Party Keith Snider.

Although not specifically stated in the Missouri Complaint, the essence of Agxplore's claim appears to allege that Mr. Shelley is infringing upon Agxplore trademarks through Mr. Shelley's relationship with PowerAG, a fictitious name used by plaintiff D&L, which exclusively sells plaintiff Weaver's[10] products.[11]

The Pennsylvania Action

On February 15, 2012 D&L and Weaver, collectively ("plaintiffs") in the present action, filed suit in this court seeking declaratory judgment to determine whether plaintiffs' trademarks infringe upon Agxplore's trademarks ("Pennsylvania action").

Specifically, in the Pennsylvania action, plaintiffs seek declaratory judgment declaring that plaintiffs' trademarks,

---

[10] D&L and Weaver are both Pennsylvania limited liability companies, each having Linford Weaver, Dwayne Weaver and Melvin Weaver as members.

[11] Mr. Shelley appears to be playing two roles in the sale and marketing of the products at issue in both the Missouri and Pennsylvania actions. Through his unnamed LLC, Mr. Shelley sells products to Weaver. Weaver markets and sells the products through D&L doing business as PowerAG. Mr. Shelley is the sole customer contact listed on promotional items of PowerAG.

The deposition testimony of Dwayne Weaver, see Exhibit A to Supplemental Memorandum in Opposition to Defendant's Motion to Dismiss or in the Alternative, Transfer and Consolidate ("Plaintiffs' Supplemental Memorandum"), Deposition of Dwayne Weaver taken August 28, 2012 in the within Pennsylvania action ("Weaver Deposition") at pages 10 and 13, indicated that Mr. Shelley is listed as the sole customer contact for products sold by PowerAG because D&L and Weaver did not wish to compete with their own distributors when engaging in sales to individual farmers, who generally purchase the products from the distributors. The deposition also indicated that Mr. Shelley is not compensated by D&L or Weaver for his role as the customer representative of PowerAG and is solely compensated through his unnamed LLC.

the very same trademarks Agxplore alleges Mr. Shelley is infringing upon in the Missouri case, infringe upon Agxplore's trademarks.

On March 27, 2012 Agxplore filed the within motion requesting this court to dismiss plaintiffs' Pennsylvania action for lack of subject matter jurisdiction and improper venue, or in the alternative, to transfer the Pennsylvania action to the Eastern District of Missouri for consolidation.[12]

Specifically, Agxplore contends that the "first-filed" rule compels this court to dismiss or transfer plaintiffs' declaratory judgment action because Agxplore's Missouri case contains the exact same subject matter as the Pennsylvania action. Furthermore, Agxplore contends that Mr. Shelley, D&L and Weaver have a sufficient connection to each other to allow this court to exercise its discretion and transfer the declaratory judgment action.

_____

[12] After both parties filed initial memoranda regarding Agxplore's within motion, by my Order dated July 2, 2012 and filed July 3, 2012, I approved the parties stipulated agreement to conduct limited discovery on the issue of privity between Mr. Shelley and plaintiffs by August 28, 2012. Furthermore, I permitted the parties to file supplemental memoranda to argue the applicability of additional information gleaned through discovery.

By my Order dated September 16, 2012 and filed on September 17, 2012 I approved the parties second stipulation to extend the limited discovery deadline until September 7, 2012 and gave plaintiffs until September 21, 2012 to file a supplemental memorandum in opposition to the motion to dismiss. Furthermore, I gave Agxplore fourteen days from the date plaintiffs filed their supplemental memorandum to file a reply brief in support of its motion to dismiss.

On September 21, 2012 Plaintiffs' Supplemental Memorandum was filed, along with Exhibits A and B. On October 5, 2012 Defendant's Reply Memorandum was filed, along with Exhibits A through J.

So as not to waste judicial resources, I grant Agxplore's motion to the extent that it seeks transfer of the Pennsylvania action to the Eastern District of Missouri and deny Agxplore's motion to dismiss.

DISCUSSION

Defendant Agxplore contends that the Pennsylvania action should be transferred to the Eastern District of Missouri under the "first-filed rule" and 28 U.S.C. § 1404(a) and should be consolidated with the Missouri case. Plaintiffs D&L and Weaver contend that transfer is not proper under the "first-filed rule" because D&L's and Weaver's connection to Mr. Shelley is too attenuated to support the use of the first-filed rule.

In addition, D&L and Weaver argue that Agxplore acted in bad faith by bringing the Missouri case preemptively in an effort to force plaintiffs to "litigate the trademark issue in a distant and inconvenient forum."[13] Plaintiffs assert that in the event I decided to transfer this case to Missouri, the Eastern District of Missouri lacks personal jurisdiction over them and venue there would be improper.

Because I find it more appropriate to transfer the Pennsylvania action, as opposed to dismissing it, and in the interests of justice, I look to the rules for transfer of venue under 28 U.S.C. § 1404(a). Furthermore, because of the existence

---

[13]     Plaintiff's Supplemental Memorandum at 3.

of a related pending action in the Eastern District of Missouri,
I look to the first-filed rule to determine if the Missouri case
has priority over the Pennsylvania action.

<u>Transfer under 28 U.S.C § 1404(a)</u>

For the convenience of parties and witnesses, and in
the interest of justice, a district court may transfer any civil
action to any other district or division where it might have been
brought.  28 U.S.C § 1404(a).  Section 1404(a) applies to cases
where venue would be proper in both the original and requested
locations.  <u>Jumara v. State Farm Insurance Company</u>, 55 F.3d 873,
878 (3d Cir. 1995).[14]

---

[14]   In a general transfer of venue case under section 1404(a), courts
are required to weigh several relevant private and public factors in
considering whether to grant a motion to transfer.  The private factors
include: (1) plaintiff's choice of forum; (2) defendant's preference;
(3) whether the claim arose elsewhere; (4) the convenience of the parties as
indicated by their relative physical and financial conditions; (5) convenience
of witnesses, only to the extent that they may be unavailable for trial in one
of the fora; and (6) the location of books and records, only to the extent
that they could not be produced in one of the fora.  <u>Jumara</u>, 55 F.3d at 879.

The public factors include: (1) enforceability of the judgment;
(2) practical considerations which could make the trial easy, expeditious, or
inexpensive; (3) relative administrative difficulties in the two fora
resulting from court congestion; (4) local interests in deciding local
controversies at home; (5) public policies of the fora; and (6) the
familiarity of the trial judge with the applicable state law in diversity
cases.  <u>Jumara</u>, 55 F.3d at 879-880.

Here, plaintiffs' choice of forum and relative convenience of the
parties weighs against transfer as plaintiffs clearly do not wish to litigate
their declaratory judgment action in Missouri.  Agxplore's preference and
whether the claims arose elsewhere clearly favor transfer.  Convenience of the
witnesses and the location of the books and records appear to not weigh
heavily either in favor of, or against, transfer of venue.  In all, the
private factors arguably weigh slightly against transfer.

However, the public factors weigh heavily in favor of transfer.
Permitting two cases to proceed in different fora involving the exact same
issues "leads to the wastefulness of time, energy and money that § 1404(a) was

(Footnote 14 continued:)

- 11 -

Notwithstanding the applicability of the <u>Jumara</u>
factors, "courts in our district have held that where there is a
strong likelihood of consolidation with a related action, a
transfer of venue is warranted." <u>Villari Brandes & Kline,</u>
<u>P.C. v. Plainfield Specialty Holdings II, Inc.</u>, 2009 WL 1845236
at *5 (E.D.Pa. June 26, 2009)(Bartle, C.J.); <u>see</u> <u>also</u> <u>Maximum</u>
<u>Human Performance, Inc. v. Dymatize Enterprises, Inc.</u>,
2009 WL 2778104 (D.N.J. August 27, 2009).

In <u>Villari</u>, my colleague, then Chief District Judge,
and now Senior District Judge, Harvey Bartle III, discussed the
relationship between transfer under section 1404(a) and the
first-filed rule by stating that "the presence of a related
action in the transferee forum is such a powerful reason to grant
a transfer that courts do so even where other <u>Jumara</u> factors,
such as the convenience of the parties and witnesses, would
suggest the opposite." <u>Villari,</u> 2009 WL 1845236 at *5. This
remains true "even though the transfer conflicts with the
plaintiff's choice of forum." <u>Id.</u>

Because the only <u>Jumara</u> factors weighing against
transfer are plaintiffs' choice of forum and the convenience of

---

(<u>Continuation of footnote 14</u>):

designed to prevent.  <u>Villari</u>, 2009 WL 1845236 at *5.  Moreover, transfer
would likely alleviate any potential enforceability or administrative issues
and there appears to be no local interest or public policy conflicts.
Furthermore, the only claim being transferred is based upon federal law which
negates of any problems with the Missouri federal court's application of law.

the parties, I conclude that the propriety of transfer depends upon the application of the first-filed rule.  Therefore, so long as venue is proper in the Eastern District of Missouri to hear the Pennsylvania action, and the relationship of the two actions comport with the application of the first-filed rule, transfer of the Pennsylvania action to the Eastern District of Missouri is warranted.  See Villari, 2009 WL 1845236 at *5.

### First-Filed Rule

The first-filed rule is "grounded in equitable principles" and "encourages sound judicial administration and promotes comity among federal courts of equal rank."  Equal Employment Opportunity Commission v. University of Pennsylvania, 850 F.2d 969, 971 (3d Cir. 1988)("E.E.O.C.").

When two district courts have concurrent jurisdiction, the rule gives discretion to district courts to transfer, dismiss or stay a subsequent proceeding "involving the same parties and the same issues already before another district court." E.E.O.C., 850 F.2d at 971; see Crosley Corporation v. Hazeltine Corporation, 122 F.2d 925 (3d Cir. 1941).

Only under "rare or extraordinary circumstances" should a district court deviate from the application of the first-filed rule.  Such circumstances include "inequitable conduct, bad faith, or forum shopping," among others.  E.E.O.C., 850 F.2d at 972.  The party opposing the application of the first filed-rule

bears the burden of showing such extraordinary circumstances exist.  Maximum, 2009 WL 2778104 at *4.

In the event the court elects to transfer the second-filed action, 28 U.S.C. § 1404(a) concerning change of venue for the convenience of parties and witnesses must also be satisfied. Maximum, 2009 WL 2778104 at *2.

Subsequent to E.E.O.C. the Third Circuit applied the first-filed rule more narrowly, requiring the two proceedings to be "truly duplicative" and the second-filed action must be "materially on all fours with the previously filed action to trigger the first filed rule."  Photomedix, Inc. v. St. Paul Fire & Marine Ins. Co., 2009 WL 2326750 at *5 (E.D.Pa. July 28, 2009)(Yohn, Jr., S.J.) (internal quotes omitted); citing Grider v. Keystone Health Plan Central Inc., 500 F.3d 322, 333 n.6 (3d Cir. 2007).

Although the parties in the action must share an identity, "[t]he substantive touchstone of the first-to-file inquiry is subject matter."  QVC, Inc. v. Patiomats.com, LLC, 2012 WL 3155471 at *3 (E.D.Pa. August 3, 2012)(Schiller, S.J.) (internal quotes and citation omitted).

### Concurrent Jurisdiction

Plaintiffs contend that the Eastern District of Missouri does not share concurrent jurisdiction over its declaratory judgment action with the Eastern District of

Pennsylvania because personal jurisdiction and proper venue would be lacking in the State of Missouri.

Specifically, plaintiffs D&L and Weaver each claim that because they are both Pennsylvania limited liability companies with their principal place of business located in Lancaster, Pennsylvania, that both personal jurisdiction and venue would be lacking over them in the State of Missouri.

Plaintiffs misinterpret the law by claiming that the Eastern District of Missouri lacks personal jurisdiction over plaintiffs. The proper question is whether a district court may exercise personal jurisdiction over the defendant in an action, not over the plaintiff. See Maximum Human Performance, Inc. v. Dymatize Enterprises, Inc., 2009 WL 2778104 at **6-7 (D.N.J. August 27, 2009)

Agxplore is the defendant in this action. Agxplore is a Missouri limited liability company with its principal place of business in Parma, Missouri.[15] All members of Agxplore are citizens of Missouri.[16] Accordingly, the Missouri court may exercise personal jurisdiction over defendant Agxplore. Id.

Furthermore, it is clear that the Missouri district court has subject matter jurisdiction over the Pennsylvania declaratory judgment action. Diversity jurisdiction remains

---

[15]    See First Amended Complaint for Declaratory Judgment, paragraph 5.

[16]    See First Amended Complaint, paragraph 6.

between the parties (Pennsylvania plaintiffs and a Missouri defendant) whether the suit is heard in Pennsylvania or Missouri, and the amount in controversy would not change because of the transfer.

In addition, even if there were not diversity of citizenship, the Missouri district court would have subject matter jurisdiction based upon a federal question, because the declaratory judgment action is rooted in the Lanham Act, 15 U.S.C. § 1125(a).

Venue is also proper in the eastern District of Missouri.[17] Contrary to plaintiffs' contentions, proper venue is determined based upon where the defendant, not the plaintiff, resides, conducts business, or is subject to personal jurisdiction. More specifically, pursuant to 28 U.S.C. § 1391(b):

> **(b) Venue in general.—** A civil action may be brought in—
>
>> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>>
>> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

---

[17]    Unlike copyright and patent suits, trademark suits brought pursuant to the Lanham Act are subject only to the general rules of venue under 28 U.S.C § 1391.  Mida Manufacturing Company v. Femic, Inc., 539 F.Supp. 159, 162 (E.D.Pa. 1982)(Broderick, J.).

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Again, Agxplore's principal place of business is located in Parma, New Madrid County, Missouri; New Madrid County is located within the Eastern District of Missouri, Southeastern Division. See 28 U.S.C. § 105(a)(3). Accordingly, venue is proper in Missouri, and concurrent jurisdiction exists.

### Identity of Parties

Notwithstanding the Third Circuit's interpretation of the first-filed rule, courts within the Third Circuit have nevertheless applied the rule to proceedings with different parties stating "[t]he applicability of the first-filed rule is not limited to mirror image cases where the parties and the issues perfectly align." QVC, 2012 WL 3155471 at *3. See also Maximum, 2009 WL 2778104 at *3, which states that there must be "substantial overlap between the two actions, but the issues and the parties involved need not be identical" (internal quotes and citation omitted).

Both Agxplore and plaintiffs engage in lengthy discussions of privity, through the doctrine of *res judicata*, in order address the identity requirement of the first-filed rule. Notwithstanding the parties lengthy discussion of privity, I

conclude that its application is limited in the context of the case before me.[18]

The Third Circuit requires that "the issues must have such an identify that a determination in one action leaves little or nothing to be determined in the other."  Photomedex, 2009 WL 2326750 at *5.  However, although the substantive touchstone of the first-to-file inquiry remains the subject

---

[18]    In support of its position that the parties need not be identical, Agxplore cites the United States District Court for the Southern District of Iowa for the proposition that the parties in the two actions need not be the same parties so long as the two actions are "parallel".  In determining parallelism, the court looks to the res judicata principal of privity. AG Leader Technology, Inc. v. Ntech Industries, Inc., 574 F.Supp.2d 1011, 1016 (S.D.Iowa 2008).

Although districts within the Third Circuit do not draw this same connection between the application of privity in the context of res judicata and the first-file rule, the parties lengthy discussion of privity bears discussion here.  Res judicata requires "two suits involv[ing] the same [parties] or those parties in privity with them."  AG Leader, 574 F.Supp.2d at 1016 (internal quotes and citation omitted).

Notwithstanding the similar language of privity and the identity requirement of the first-filed rule, the two doctrines do not perfectly overlap because they are mutually exclusive.  See Cadle Company v. Whataburger of Alice, Inc., 174 F.3d 599, 603-604 (5th Cir. 1999).  In Cadle, the United States Court of Appeals for the Fifth Circuit stated that collateral estoppel and res judicata are "backward-looking" doctrines applied "to avoid relitigation of, and inconsistency with, issues already decided by other courts", while the first-to-file rule is "forward-looking" and applied "to maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case pending in another court."  Id. (emphasis in original).  Although this Fifth Circuit case is merely persuasive, its reasoning is sound, especially when the first-filed rule is being used to transfer, as opposed to dismiss.

Unlike dismissal, the effect of transferring the second-filed action to another district court does not preclude the plaintiff in the second action from adjudicating his claim.  Furthermore, how the second-filed claim is ultimately handled once transferred falls to the discretion of the court presiding over the first-filed action and does not bear on the issue of whether to grant transfer of the second action.  Thus, in exercising my discretion to transfer the second action under the first-filed rule, I need not address res judicata when determining the propriety of transfer.  See Cadle Company, supra.

matter, the Third Circuit nevertheless requires the parties to be more than merely interested in each others respective suits. Compare Just Enterprises, Inc. v. O'Malley & Langan, P.C., 560 F.Supp.2d 345 (M.D.Pa. 2008), with Villari, supra.

In Just Enterprises, defendant argued that the court should dismiss the second-filed trademark-infringement action against it because plaintiff had previously filed a number of trademark-infringement suits, regarding the same trademark, against non-related defendants in other courts. There, United States District Judge James M. Munley held that the first-filed rule did not preclude litigation of the second-filed action because there was "not identity of parties" between the numerous suits. Just Enterprises, 560 F.Supp.2d at 348.

Although the subject matter was very similar (the same trademarked name), defendant in the second action had no connection with the defendants in the other actions except that they all allegedly infringed upon the same trademark of plaintiff. Id. Furthermore, the second action contained unique questions of fact and law.

Conversely in Villari, then Chief Judge, now Senior Judge, Bartle allowed the application of the first-file rule notwithstanding the fact that the parties in the related suits were not identical. In Villari, the first suit involved plaintiff Plainfield suing CLS in the United States District

Court for the Eastern District of Michigan for defaulting on a loan.  <u>Villari</u>, 2009 WL 1845236 at *2.

Subsequently, Villari filed suit against Plainfield in the United States District Court for the Eastern District of Pennsylvania alleging breach of oral promises and reassurances arising from the same loan given by Plainfield to CLS.  <u>Villari</u>, 2009 WL 1845236 at *3.  In transferring the Pennsylvania suit brought by Villari to the Eastern District of Michigan, Judge Bartle noted that Villari and CLS, although not the same parties, "have had a symbiotic relationship" and Villari's suit against Plainfield involved the same issues as Plainfield's suit against CLS, namely the loan.  <u>Villari</u>, 2009 WL 1845236 at *1.

Here, I conclude that the relationship between Mr. Shelley, D&L and Weaver is sufficient to allow for the application of the first-filed rule.

Unlike <u>Just Enterprises</u>, where defendant had no connection to the parties in the other suits, D&L, Weaver and Mr. Shelley have a symbiotic relationship as it relates to the products at issue in both the Missouri and Pennsylvania actions. Moreover, disposition of the federal trademark-infringement claim against Mr. Shelley would leave nothing to be determined in the declaratory judgment action in the Pennsylvania action.

Initially, Mr. Shelley has an intimate knowledge of the product lines being sold by PowerAG.  Not only does Mr. Shelley

sell the products to Weaver, who subsequently sells the products to customers through D&L's d/b/a PowerAG, but Mr. Shelley was involved in the naming of the products. The names of the trademarked products represent the crux of the disputes in both actions. Simply, one of the ways Mr. Shelley allegedly infringes upon Agxplore's trademarks was by helping D&L and Weaver come up with the allegedly confusing similar names sold by PowerAG. Without coincidence, D&L and Weaver are allegedly infringing upon those same Agxplore trademarks by selling the products using the names originating, at least in part, from the input of Mr. Shelley.

Furthermore, Mr. Shelley is involved in the marketing and advertising of those very same products, now sold by PowerAG. All PowerAG advertising materials holds Mr. Shelley out as the sole public representative of the PowerAG brand. Should customers have questions or wish to purchase the products from PowerAG, all customers are directed to contact Mr. Shelley.[19]

---

[19] Plaintiffs argue strongly that because Mr. Shelley is not technically an employee of D&L or Weaver, and Mr. Shelley is not compensated for his work as the representative of PowerAG, he and plaintiffs do not share the requisite legal relationship necessary to support the use of the first-filed rule. At a minimum, the relationship between Mr. Shelley and PowerAG is one of apparent authority. See In re McGlynn, 974 A.2d 525, 534 at note 9 (Pa.Commw. 2009) (stating "[a]pparent authority is the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to third persons.").

Although it appears that Mr. Shelley may have little actual authority, see Exhibit A to Agxplore's Supplemental Memorandum, N.T. Weaver at pages 17-18, PowerAG clearly manifests to third persons, namely customers,

(Footnote 19 continued:)

- 21 -

The alleged infringement at the heart of both the Missouri and Pennsylvania actions, by both Mr. Shelley and plaintiffs, are intimately connected, and plaintiffs cannot escape the application of the first-filed rule by claiming they are not the "same parties" as exist in the Missouri case. Therefore, I conclude that the identity of the parties supports the application of the first-filed rule and in favor of transfer.

**Same Subject Matter**

In addition to having suits with parties of sufficient identity, courts within the Third Circuit emphasize that "the principles underlying the rule support its application where the subject matter of the later filed case substantially overlaps with that of the earlier one." <u>Villari</u>, 2009 WL 1845236 at *6.

Here, the subject matter, namely the allegedly infringing trademarks, of both the Missouri and Pennsylvania actions are identical. The products at issue in both suits are the same. The trademark names held by D&L d/b/a PowerAG are the very same trademarked names Agxplore alleges are being infringed upon by Mr. Shelley. Moreover, the actions of Mr. Shelley, D&L and Weaver that give rise to the alleged trademark infringement

_____

(<u>Continuation of footnote 19:</u>)

that Mr. Shelley does in fact have a great amount of authority as PowerAG's sole customer representative. This apparent authority, when viewed along with Mr. Shelley's involvement in the creation, naming, marketing and selling of PowerAG products, leads me to conclude that the relationship between Mr. Shelley and plaintiffs in the present matter share an identity as it relates to the alleged infringing trademarks at issue in both the Missouri and Pennsylvania actions.

are interrelated to such a degree that culpability of one may be dependent on the actions of the other. There is simply no questions of fact that differ between the actions.

Furthermore, unlike _Just Enterprises_, _supra_, there are no questions of law that cause these two actions to diverge. In _Just Enterprises_, the subsequent action in which defendant wished to have dismissed pursuant to the first-filed rule included a Pennsylvania state law claim. _Just Enterprises_, 560 F.Supp.2d at 348-349.

Here, the only claim that is being transferred to the Eastern District of Missouri is a declaratory judgment action based solely on the federal trademark statute; the very same claim under the very same statute already existing against Mr. Shelley in the Missouri case. _See_ _e.g._ _QVC_, 2012 WL 3155471 at *3, which found transfer to be proper because the same dispute raised by the plaintiff in the second-filed action was already being litigated in the first-filed action, that is no unique or novel issues not already present in the first-filed action would be transferred.

With no divergent questions of fact and law, I conclude that there is substantial overlap in the subject matter of the Missouri and Pennsylvania actions sufficient to favor transfer of the Pennsylvania action pursuant to the first-filed rule.

## Compelling Circumstances

Plaintiffs contend that the first-filed rule is inapplicable in this case because Agxplore's institution of the Missouri case two weeks prior to plaintiffs institution of the Pennsylvania action was "a transparent attempt to manipulate forum and force D&L and Weaver to litigate the trademark issue in a distant and inconvenient forum."[20]  Plaintiffs allege that Agxplore brought suit against Mr. Shelley for trademark infringement in Missouri only because Agxplore would be unable to bring suit against D&L and Weaver in Missouri.

Notwithstanding the accuracy of plaintiffs' claims concerning Agxplore's intentions, I conclude that such intentions do not constitute compelling circumstances sufficient to justify deviation from the first-filed rule.

There is no evidence that Agxplore was aware that plaintiffs were going to file the present declaratory judgment action in Pennsylvania.  Accordingly, there exists no evidence that Agxplore's trademark infringement suit brought in Missouri was a preemptive action taken to usurp plaintiffs' litigation rights.  See e.g. UTI Corporation v. Plating Resources, Inc., 1999 WL 286441 at *7 (E.D.Pa. May 7, 1999)(Waldman, J.).

Furthermore, there is no evidence that the Missouri case was improperly brought or that the claims lack merit.

---

[20]     Plaintiffs Memorandum, at 14.

Although this is not dispositive of issue before me, see E.E.O.C., 850 F.2d at 975-976, the apparent meritorious nature of the claims brought in the Missouri case weaken plaintiffs assertion that Agxplore's suit was brought in bad faith as an attempt to forum shop.

It appears that Agxplore may have the same motivation for bringing the Missouri case as plaintiffs have in bringing this Pennsylvania action. Neither party appears to want to litigate their respective trademark infringement suits in distant fora. Had plaintiffs simply desired to protect their own interests in the trademarks, they could have intervened in the Missouri case. Presumably, they did not do so because they did not want to litigate in Missouri. Likewise, Agxplore could have sued plaintiffs in Pennsylvania but presumably did not do so because they did not want to litigate in Pennsylvania.

The first-filed rule is designed to address such a situation where two related meritorious actions are brought in separate fora, commenced for reasons other than bad faith or forum shopping. See E.E.O.C., supra. Agxplore's desire to litigate an apparently meritorious claim in a familiar forum does not establish the requisite bad faith necessary to depart from the application of the first-filed rule. Compare E.E.O.C., supra, with IMS Health, Inc. v. Vality Technology Inc., 59 F.Supp.2d 454, 464-465 (E.D.Pa. 1999)(Reed, Jr., S.J.).

Therefore, I conclude that plaintiffs have not met their burden of proving the existence of compelling circumstances sufficient to justify deviating from the application of the first-filed rule.

## CONCLUSION

For all of the foregoing reasons, Defendant's Motion to Dismiss or, in the Alternative, Transfer and Consolidate is granted in part and denied in part.

Specifically, Agxplore's motion is granted to the extent that it seeks transfer of the underlying declaratory judgment action from the Eastern District of Pennsylvania to the Eastern District of Missouri, Southeast Division. Agxplore's motion is denied in all other respects.[21]

---

[21] Because transfer is more appropriate, I deny Agxplore's motion to dismiss. Furthermore, I leave the procedural question on how best to proceed with the declaratory judgment claim post-transfer to the assigned Judge in the Eastern District of Missouri. Therefore, I deny Agxplore's motion to the extent that it seeks an Order consolidating this action with the pending action before the Missouri court.